IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FRANCIS STONE,

      Plaintiff,

v.                                      CASE NO. 1:10-cv-00159-MP-GRJ

BRANDY DEWEY, MARTHA HUMPHRIES, WALTER A MCNEIL, M ROBERTS,

      Defendants.

_____/

## O R D E R

      This matter is before the Court on Doc. 27, Report and Recommendation of the Magistrate Judge, which recommends that all pending motions by Stone be denied, defendants' motion to dismiss, Doc. 22, be granted, and this case be dismissed without prejudice pursuant to 28 U.S.C. § 1915A.  Stone timely objected to the Report and Recommendation, Doc. 29, to which defendants responded, at Doc. 30.  Stone then replied to defendants' response.  Doc. 34. Defendants filed a Motion for Leave to File a Sur-Reply, Doc. 35.  Stone did not oppose the motion, and the Court granted it, at Doc. 36.  After defendants filed their Sur-Reply, Doc. 37, Stone filed a Motion for Sanctions and Order to Show Cause, Doc. 38.  Defendants subsequently filed a Response to Plaintiff's Motion for Sanctions, at Doc. 39.  As to the Report and Recommendation, this Court reviews objected to material *de novo*.

      Stone is an inmate serving a life sentence in the custody of the Florida Department of

Corrections.  Doc. 1.  He alleges he is a member in good standing of the Hells Angels

Motorcycle Club.  He seeks declaratory and injunctive relief against prison officials and the

Secretary of the Department of Corrections for restrictions that were placed on his ability to

receive mail both at the Central Florida Reception Center (CFRC) and the Mayo Correctional

Institution.  *Id.*  Stone claims that defendants violated his First and Fourteenth Amendment rights

by refusing to deliver to him mail from Hells Angels members.  *Id.*

     In executing this claim, Stone filed a civil rights complaint form under penalty of perjury.

*Id.* at 13.  Section IV of this form requires prisoners to disclose information regarding previous

lawsuits and warns that failure to do so may result in the dismissal of the case.  *Id.* at 3-5.  The

form specifically requires the disclosure of all state and federal court actions initiated by the

prisoner "dealing with the same or similar fact/issues involved in this action."  *Id.* at 3.  It also

requires disclosure of whether the prisoner has initiated actions in either state or federal court

relating to the fact or manner of incarceration or the conditions of confinement.  *Id.* at 4.  Stone

checked "No" for each of these questions.  *Id.* at 3-4.  However, Stone did previously file an

action in state court concerning a refusal to deliver various publications and personal letters at

Avon Park Correctional Institution which either referenced or contained materials from the Hells

Angels Motorcycle Club.  *See Stone v. Ward*, 752 So. 2d 100 (Fla. Dist. Ct. App. 2000)

(affirming trial court's denial of petition for mandamus alleging that prison wrongfully refused to

deliver mail bearing the Hells Angels logo).

     In their motion to dismiss, defendants argue that Stone's Complaint, should be dismissed

without prejudice as a sanction for his failure to exercise candor and honesty in completing the

civil rights complaint form.  Stone's failure to disclose the prior state case contravenes the clear

disclosure requirements of the form.  Moreover, given the prior state case, Stone's sworn

allegation that he had experienced "no problem receiving his mail from other members of the Hells Angels Motorcycle Club/Corporation" prior to his arrival at the CFRC is patently false. Doc. 1.  Stone never responded to these arguments.  Instead, he filed a motion for leave to amend the complaint.  Doc. 23.

Failure to disclose previous lawsuits as clearly required on the Court's prisoner civil rights complaint form warrants dismissal of the complaint for abuse of the judicial process.  *See Redmon v. Lake Cnty. Sheriff's Office*, 414 F. App'x 221, 225 (11th Cir. 2011).  Where "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted," the court shall dismiss the complaint.  28 U.S.C. § 1915A.  Likewise, "a district court may impose sanctions if a party knowingly files a pleading that contains false contentions." *Redmon*, 414 F. App'x at 225 (citing Fed. R. Civ. P. 11(c)).  In making this decision, the court may consider any explanation that might excuse a plaintiff's lack of candor.  *Id.* at 226.  While "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, a plaintiff's *pro se* status will not excuse mistakes regarding procedural rules." *Id.* at 225-26 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

In his Report and Recommendation, the Magistrate Judge correctly found that, in light of Stone's previous litigation in *Stone v. Ward*, Stone's answers on the complaint form in the instant case constituted a lack of candor comparable to that found in *Redmon*.  However, unlike in *Redmon*, where the plaintiff stated that he simply "misunderstood the form," *id.* at 226, Stone, prior to the Report and Recommendation, had offered no reason for failing to disclose his prior case.  In the absence of any basis for excusing Stone's lack of candor, such conduct merits the sanction of dismissal of the Complaint without prejudice.  *Id.*

Stone objects to the Report and Recommendation, arguing first that the Court should not consider defendants' filing as a motion to dismiss and, second, that even if it is taken as a motion to dismiss, Stone had no duty to respond to the motion since the Court never advised him of such a duty.  In the alternative, Stone presents several excuses for his failure to disclose previous lawsuits, including poor legal advice, poor eyesight, and memory loss.  Docs. 29, 34.  In discussing his memory loss, Stone asks that this Court disregard defendants' Sur-Reply, Doc. 37, arguing that it does not comply with the Northern District's local rules.  Finally, Stone contends that even if sanctions are warranted, dismissal of his Complaint is inappropriate.  Doc. 29.  This Court will address each of these arguments, respectively.


**MOTION TO DISMISS & DUTY TO RESPOND**

In filing their motion to dismiss defendants attached a portion of the case *Stone v. Ward*, whose existence tended to show that Stone answered his complaint form falsely.  *See* Doc. 22, Ex. 1.  Prior to the Report and Recommendation Stone never objected to this motion.  However, Stone now argues that the attachment of exhibits is prohibited in the filing of a motion to dismiss.  If attachments are included, the motion must be treated as a motion for summary judgment.  Doc. 29.

The Federal Rules of Civil Procedure do not speak to this issue directly; however, "'[i]t is recognized that a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  *Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 8:10-cv-665-T-33EAJ, 2011 WL 308237, at *1 (M.D. Fla. Jan. 27, 2011) (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).  Regardless of the attachment, this Court may take judicial

notice of *Stone v. Ward*.  That defendants attached the case to their motion to dismiss is,

therefore, irrelevant and does not alter its status as a motion to dismiss.

Stone also argues that the Court should not hold against him his failure to respond to

defendants' motion to dismiss.  The Court neither ordered Stone to respond nor advised him that

a failure to respond might result in the dismissal of this action.  Doc. 29.  However, the Court is

under no obligation to advise him of such a matter.  Local Rule 7.1(C) for the Northern District

of Florida sets out the requirements and limitations for filing a responsive memorandum,

explicitly stating that "[f]ailure to file a responsive memorandum may be sufficient cause to

grant the motion."  This rule places Stone on notice about the importance of filing a responsive

memorandum.  His pro se status will not excuse any mistakes regarding procedural rules.

*Redmon*, 414 F. App'x at 225-26 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).


## EXCUSES FOR FAILURE TO DISCLOSE

Despite his failing to file any reply memorandum to defendants' Motion to Dismiss,

Stone has subsequently presented three excuses for his lack of candor in answering the questions

on his civil rights complaint form.  First, he argues that his failure to disclose was the product of

poor advice he received from a law clerk working at the Mayo CI Law Library.  Doc. 29.  Stone

claims that after meeting with the clerk on several occasions and telling the clerk "that he had

problems with his mail at Avon Park Correctional Institution," the clerk "told him that it did not

matter and he could just send the complaint like it was."  *Id.*  Based on this advice, Stone

submitted his complaint without any mention of the prior action.  *Id.*

As with the decision of whether to file a response, the decision of what to include in a

complaint rests entirely on the plaintiff's shoulders.  In filing the civil rights complaint, Stone

declared under penalty of perjury that the answers made therein were true.  Doc. 1.  By failing to disclose the prior state case *Stone v. Ward*, Stone violated this declaration, regardless of whether he may have received poor advice from a law clerk.  Poor legal advice is not a sufficient basis for avoiding dismissal in the instant case.

Second, Stone argues that his lack of disclosure should be excused due to his eye problems.  Doc. 29.  He alleges that he has undergone cataract surgery since his incarceration at the Mayo Correctional Institute and, as a result, "must rely on other prisoners to assist him in reading his mail, legal documents, and writing."  Doc. 29.  However, blaming this failure to disclose on fellow inmates is no different than blaming it on the poor advice received from a law clerk.  Ultimately, as a pro se litigant, Stone's case is his own.  Again, dismissal without prejudice is warranted.

Finally, Stone asserts that severe memory loss caused him to forget to include his prior legal claims.  Doc. 34.  Allegedly, Stone uses the drug "Propranolol" which he claims causes memory loss.  *Id.*  He has been using this drug for the past two to three years..  *Id.*  Since he filed his Complaint less than one year ago, Stone argues that the memory loss must have influenced his responses to the questions on the complaint form.  However, given the other excuses Stone raises and certain inconsistencies that arise therefrom, this explanation is unpersuasive.  First, in his initial response to the Magistrate Judge's Report and Recommendation, Stone raised no issues of forgetfulness, but rather centered his excuses around both the poor advice he received from a law clerk and his own poor eyesight.  Doc. 29.  If forgetfulness was a genuine reason for the failure to disclose, a reasonable person would have raised it immediately.  Second, Stone's excuse concerning the law clerk contradicts his affirmative declaration to the Court that he had never had a problem with his mail prior to the instant case.  Doc. 1.  In his alleged discussion

with the law clerk, Stone mentioned that he had experienced "problems with his mail at Avon

Park Correctional Institution."  Doc. 29.  However, in his Complaint, Doc. 1, Stone represented

that he had never initiated any action, either in state or federal court "dealing with the same or

similar fact/issues involved in this action."  *Id.* at 3.  Clearly, Stone remembered the events

concerning his mail at Avon Park Correctional Institution prior to initiating the instant suit.

Thus, Stone's purported memory loss is unconvincing.

　　　　Defendants raised the above arguments against Stone's memory loss in their Sur-Reply.

Stone asks that this Court order sanctions against defendants for filing the Sur-Reply, dismiss the

Sur-Reply and, presumably, ignore the points made therein.  Doc. 38.  Stone bases these

demands on defendants' alleged failure to comply with Local Rule 7.1(B) for the Northern

District of Florida, which requires that, with any motion, "counsel for the moving party . . . shall

confer with counsel for the opposing party and" certify to the court that counsel for the moving

party "has conferred with counsel for the opposing party in a good faith effort to resolve by

agreement the issues raised or has attempted to so confer but, for good cause stated, was

unsuccessful."  Stone argues that counsel for defendants did not attempt in good faith to confer

with him prior to filing Defendants' Motion for Leave to File a Sur-Reply, Doc. 35, thereby

violating Rule 7.1(B).  The Court finds that the motion for sanctions should be denied.

　　　　In an effort to comply with Rule 7.1(B), counsel for defendants certified "that on June 9,

2011, [he] sent correspondence to Plaintiff asking if he objected to the subject matter of

[Defendants' Motion for Leave to File a Sur-Reply]."  Doc. 35.  Stone received this

correspondence on June 14, 2011, after defendant Dewey gave it to him.  Doc. 38.  Defendants'

Motion for Leave to File a Sur-Reply was filed on June 13, 2011.

　　　　Stone first claims that Dewey acted in bad faith by causing the delivery of this

correspondence to be delayed until after defendants' motion was filed.  Doc. 38.  Stone also

argues that, even in the absence of the delay, he would have received the correspondence on June

11 at the earliest.  *Id.*  Counsel for defendants, at the earliest, would have received Stone's reply

on June 14.  *Id.*  In other words, even if no delay had occurred, Stone would not have been able

to respond to counsel for defendants prior to the filing of defendants' motion at Doc. 35.  In light

of this time-line, Stone argues that counsel for defendants failed to act in good faith pursuant to

Rule 7.1(B) and, as a consequence, sanctions are appropriate.

The purpose behind requiring a Rule 7.1(B) conference is to promote judicial economy

by allowing the parties an opportunity to resolve motion disputes before involving the court.

*See, e.g.*, *H2Ocean, Inc. v. Schmitt*, No. 3:05cv387/RV/EMT, 2006 WL 3837411, at *5 (N.D.

Fla. Dec. 22, 2006) (discussing how a violation of Rule 7.1(B) "needlessly involved [the]

court").  If, for example, parties were ready to agree to allowing a sur-reply, failing to hold a

conference would needlessly involve the court.  In the instant case, by sending correspondence to

Stone, counsel for defendants attempted to confer with him.  Although, given the sparse time

between the sending of the correspondence and the filing of the motion at Doc. 35, Stone may

question the good faith behind the correspondence, counsel for defendants acknowledged this

brief time-line and stated that he would notify this Court if and when Stone responded.  *See* Doc.

35.  In other words, counsel for defendants kept open the possibility that Stone would respond,

therein keeping open the possibility that the motion at Doc. 35 would be resolved without any

needless court involvement.  By acting in this manner, counsel satisfied his burden of

corresponding in good faith.

Stone also argues that Local Rule 7.1(C)(2) "does not allow a party to file a [sur-reply]."

Doc. 38.  According to Stone, allowing such a reply would undermine the ambition of resolving

cases in a just and speedy manner.  Fed. R. Civ. P. 1.  As an initial matter, Stone never

challenged this motion within the allotted time-frame and, as such, this Court has already ruled

on the appropriateness of defendants' Sur-Reply.  Doc. 36.  However, for the sake of clarity, the

Court will explain why a sur-reply is appropriate in the instant case.

The Eleventh Circuit recognizes the appropriateness of sur-replies where new theories or

arguments are presented in a reply memorandum.  *See First Specialty Ins. Co. v. 633 Partners,*

*Ltd.*, 300 Fed. App'x 777, 788 (11th Cir. 2008).  In the instant case, defendants sought to file a

sur-reply in response to the new argument raised in Stone's Reply.  In his Reply, Stone argued

for the first time that his failure to disclose all prior civil cases on his civil rights complaint form

was due to memory loss he suffered as a side effect of taking the drug "Propranolol."  Doc. 34.

Since Stone presented a new argument to this Court through his Reply, defendants were entitled

to file a sur-reply.

In conclusion, sanctions against defendants are not appropriate, defendants' Sur-Reply

should not be dismissed, and the arguments presented therein should be considered.  As noted

above, based on those arguments, the Court finds Stone's purported memory loss unconvincing.

Accordingly, the Court must issue sanctions against Stone for his lack of candor in filing his

Complaint.

## DISMISSAL AS A SANCTION

Stone finally argues that if the Court is to issue sanctions for his lack of candor, dismissal

without prejudice is an inappropriate sanction.  Doc. 29.  First, such a sanction would contravene

Stone's right to amend his Complaint once as a matter of course under Federal Rule of Civil

Procedure 15(a).  *Id.*  Since defendants have filed no responsive pleading, the rules permit such

an amendment.  Fed. R. Civ. P. 15(a)(1)(B).  Second, this Court is bound to construe the Federal

Rules of Civil Procedure so as "to secure the just, speedy, and inexpensive determination of

every action and proceeding."  Fed. R. Civ. P. 1.  The denial of Stone's right to amend as a

matter of course and the dismissal of this action without prejudice would undermine judicial

economy.  Third, dismissal of Stone's Complaint would cause him a significant undue financial

burden.  Doc. 29.

Turning first to Stone's right to amend once as a matter of course, plaintiffs generally

possess such a right so long as the amendment occurs on or before the twenty-first day of service

of a responsive pleading.  *See* Fed. R. Civ. P. 15(a)(1)(B).  At least one court has declared this

right to be absolute.  *See James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 283 (D.C.

Cir. 2000) ("The Federal Rules of Civil Procedure guarantee a plaintiff an absolute right to

amend its complaint once at any time before the defendant has filed a responsive pleading.").

However, where "the allegation of other facts . . . could not possibly cure the deficiency" of the

original complaint, a court should not grant the right to amend as a matter of course.  *New v.

Armour Pharm. Co.*, 67 F.3d 716, 722 (9th Cir. 1995).

In the instant case, amendment of the original complaint would not cure Stone's lack of

candor.  While Stone could amend his complaint to include a disclosure of all state and federal

court actions initiated by Stone "dealing with the same or similar fact/issues involved in this

action," his dishonest and untruthful behavior would go undeterred.  Doc. 1, at 3.  The purpose

of the disclosure is to aid the Court in the management of its caseload.  *See, e.g.*, *Johnson v.

Crawson*, No. 5:08cv300/RS/EMT, 2010 WL 1380247, at *2 (N.D. Fla. 2010) (discussing how

the information contained in the form helps the court determine "whether the action is related to

or should be considered in connection with another action[,] . . . whether a holding in another action affects the current action," and whether the pro se litigant has any "familiarity with the legal terrain of the current action").  If the Court allowed Stone to cure the defect by simply amending the Complaint, Stone would face no punishment for his failure to disclose.  As such, "there would be little or no disincentive for his attempt to evade or undermine the purpose of the form."  *Id.*  The Court would potentially face "widespread abuse from its many prisoner litigants."  *Id.*  Judicial economy would not be served as the onus of discovering those prior actions would fall on either the Court or the opposing party.  In short, amendment of the original complaint would not cure the problems which stem from Stone's dishonesty.  The only adequate sanction is dismissal without prejudice.

Furthermore, this sanction would promote judicial economy better than would an amended complaint.  Stone believes that the Court would only achieve delay by dismissing this action without prejudice.  Doc. 29.  Upon such an order, Stone would "file a new action" based on the same theories as the original complaint.  *Id.*  According to Stone, the only difference between this course of action and an order granting his motion to amend is that the "case is set back on the docket."  *Id.*  On this point, Stone is correct.  Delay is the difference between an order dismissing the case without prejudice and an order granting Stone's motion to amend his Complaint.  The delay is the purpose behind the sanction.  Again, without dismissal, Stone would face no sanction.  As such, the Court would potentially face "widespread abuse from its many prisoner litigants." *Johnson v. Crawson*, 2010 WL 1380247, at *2.  Such abuse would create delay for all cases on the Court's docket.  Granting Stone's motion to amend, however, would only prevent delay in the instant suit.  Enforcing this sanction would, thus, better serve judicial economy than would granting Stone's motion to amend.

Stone finally contends that dismissal would cause him "a significant *undue* financial burden." Doc. 29 (emphasis added).  However, Stone ignores the fact that any financial burden caused by this dismissal will ultimately be *due* to his failure to disclose.  Moreover, while dismissal without prejudice may cause Stone a financial burden, failure to enforce some type of deterrence would potentially create significant financial waste for the Court in the future.

In conclusion, the Magistrate Judge was correct to recommend dismissal of Stone's Complaint without prejudice.  In failing to truthfully answer the civil rights complaint form, Stone has abused the judicial process.  For purposes of enforcing truthful disclosures on the form and, therein, promoting judicial economy, this Court must sanction Stone.  Dismissal without prejudice is an appropriate sanction for such abuse.  Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  The Report and Recommendation of the Magistrate Judge, Doc. 27, is ACCEPTED and incorporated herein;

2.  Plaintiff's motion for preliminary injunction, Doc. 14, is DENIED;

3.  Plaintiff's motion for leave to amend, Doc. 23, is DENIED;

4.  Plaintiff's motion for sanctions and order to show cause, Doc. 38, is DENIED;

5.  Defendants' motion to dismiss, Doc. 22, is GRANTED and this case is dismissed without prejudice pursuant to 28 U.S.C. § 1915A.

**DONE AND ORDERED** this   *14th* day of July, 2011

_____*s/Maurice M. Paul*_____

Maurice M. Paul, Senior District Judge